UNITED STATES of America,
Plaintiff-Appellee,

v.

Randolph Louis TATE and Ronald Steve Delgado, Defendants-Appellants.

No. 76–2066.

United States Court of Appeals,
Fifth Circuit.

June 27, 1977.

Victor R. Arditti, El Paso, Tex. (court-appointed), for Tate.

Bertrand C. Moser, Houston, Tex. (court-appointed), for Delgado.

John E. Clark, U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Michael T. Milligan, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

This is an entrapment case.

In the pretrial order entrapment was noted as the sole defense. In its opening statement the government attempted to discuss the anticipated defense of entrapment. The court would not permit discussion but itself noted that the defense was anticipated. After the government rested its direct case, the defendants moved, pursuant to *Roviaro v. U. S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *U. S. v. Gomez-Rojas,* 507 F.2d 1213 (CA5, 1975), to have the identity of the informer revealed and to have him produced so that they could put him on the stand as their first witness. The court noted that the defendants had already indicated to it and to the government that they intended to take the stand for purposes of testifying about entrapment. Each defense counsel then confirmed for his respective client that the client still intended to testify.

The court refused defendants' request, stating that the informer need not be produced until defendants themselves had taken the stand and invoked the entrapment defense through their own testimony. The district court appears to have based its ruling on two related reasons. The court construed the issue presented as not defendants' entitlement vel non to the identity of the informer under *Roviaro* and *Gomez-Rojas* but a matter of the order in which defendants wanted to put on their case. Second, the court's statement that defendants must take the stand and testify concerning their claim of entrapment before the informer would have to be identified and produced seems to reflect a view by the court that in the government's direct case there had not been "any evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it," *Pierce v. U. S.,* 414 F.2d 163 at 168 (CA5, 1969), that is, until there was evidence of governmental involvement, the testimony of the informer would not be material to any issue in the case.

We think that when the *Roviaro* demand was made there had been evidence of governmental involvement so as to raise entrapment as an issue. We have quoted above *Pierce's* formulation of "any evidence (etc.)." *U. S. v. Groessel,* 440 F.2d 602 at 606 (CA5), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971), refers to

"some evidence, but more than a scintilla." *Gomez-Rojas* refers to a "prima facie case" of government conduct "creating a substantial risk (etc.)." 507 F.2d at 1218. However, the court's ruling was not reversible error. We agree with the district court that, as presented to it, the issue was one of sequence of proof. Defendants were neither required nor coerced to take the stand against their wills. The defense had already stated that the defendants planned to testify, this position was reiterated when the *Roviaro* motion was made, and throughout the rest of the trial the defense never receded from it or notified the court of any change in their tactical plans. The defense called as first witness a government agent whose testimony included a description of activities of the informer and of his dealings with government agents in this case and others, but, pursuant to instructions of the court, his identity was not revealed. Defendants then testified to numerous activities and conversations with the informant. They knew his identity in the sense of physical appearance and knew the name by which he went, which, as it turned out, was an alias. When their testimony was completed the court offered to require that his correct identity be revealed in order that defendants could use him as a witness.[1] Counsel for the defendants announced that they elected not to call the informer as a witness. The government then called the informer as a rebuttal witness, and he was subjected to cross examination.

*Roviaro* requires that the identity of the informer be disclosed where it is relevant and helpful to the defense or "essential to a fair determination of a cause." 353 U.S. at 60, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646. *Roviaro* and its progeny do not inflexibly require that the informer be produced at the particular time in trial that defendant chooses. *Roviaro's* purpose is to protect the defendant against fundamental lack of fairness, not to guarantee him every tactical advantage he would like to have. It was not a breach of fundamental fairness to require the defendants to go forward with their own testimony first.

The district court gave the following jury charge on entrapment, and proper objections were made.

Entrapment is the inducement of a person by a Government Agent to commit a crime where such person has no previous intent or purpose to violate the law.

To raise the defense of entrapment, the defendant has the burden of presenting evidence that a law enforcement officer, or agent of a law enforcement officer, by initiating the illegal conduct himself, induced the defendant to commit the offense. By agent, I mean any person authorized by any Government law enforcement officer to act for him or on his behalf and is so instructed to so act for the Government law enforcement officer.

If you find that the defendant has presented such evidence, and I'm speaking of either of them, then the Government must prove beyond a reasonable doubt that the inducement was not the cause of the crime, but that the defendant was predisposed to commit the crime—that is, that he was ready and willing to commit the crime in spite of the acts of inducement by the Government agent.

However, where the criminal intent originates in the mind of the accused, the

---

1. We have assumed that the defense did not possess sufficient information concerning the informer to make *Roviaro* unavailable. *See U.*

*S. v. Melchor-Moreno*, 536 F.2d 1042 at 1047 n. 7 (CA5, 1976).

fact that the agent or officer furnishes the opportunity for or aids the accused in the commission of the crime is no defense to such prosecution, but the mere fact that a defendant commits the crime does not preclude him from asserting the defense of entrapment.

▉ In *Pierce* this circuit carefully set out the order of proof, the quantum of proof, and the division of issues between judge and jury where the defendant raises entrapment as a defense. This circuit considers entrapment as "involving two issues to be considered separately." *Pierce,* 414 F.2d at 166. Of course, the ultimate burden of proof, the "risk of nonpersuasion," is always on the government. The third paragraph of the jury instruction refers to this, and requires proof beyond a reasonable doubt. But the sufficiency of the defendant's evidence of governmental involvement is a question of law for the court in the first instance, not for the jury. Thus, the second paragraph of the instruction, stating "to raise the defense of entrapment, the defense has the burden of presenting evidence [of governmental activity tending to induce]" describes an issue for decision by the court, not the jury. The third paragraph— "If you find that the defendant has presented such evidence then . . . the Government must prove beyond a reasonable doubt that the inducement was not the cause of the crime"—nails down the error even more firmly. Under the foregoing instruction, the jury was free to conclude that the defendants had not discharged their "burden of presenting evidence [of inducement]" and thus never reach for consideration whether the government had carried its ultimate burden by proving beyond reasonable doubt that predisposition and not inducement was the cause of the crime. The jury was thereby erroneously permitted to second-guess a ruling of law which the court already had made. Of course, when the entrapment issue is submitted to the jury, the jury must consider the evidence of inducement, if it believes

that evidence, along with the evidence of predisposition to reach a conclusion on the ultimate question of whether defendant was entrapped. In addition, the instruction did not refer to the quantum of evidence necessary to discharge the defendants' so-called "burden of presenting evidence," described in *Pierce* and *Groessel.* Thus, the charge was doubly erroneous. The jury was told to decide an issue that was not for it to decide, and it was given no standard as the basis for decision.[2]

As the court pointed out in *U. S. v. Garcia,* 546 F.2d 613 at 615 (CA5, 1977), the foregoing principles have not been changed by *U. S. v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Hampton v. U. S.,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). *Russell* rejected a plea to raise entrapment to the level of a constitutional defense. It declined to overrule *Sorrells v. U. S.,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and *Sherman v. U. S.,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and to accept the views of Justice Roberts, in *Sorrells,* and Justice Frankfurter (joined by Justices Douglas, Harlan and Brennan) in *Sherman,* which would have made the essential element of entrapment the type and degree of governmental conduct, with little, if any, regard to the defendant's predisposition to commit the offense. Against this effort to read predisposition out of entrapment law and to leave governmental activity as the sole element, the Court referred in *Russell* to predisposition as the "principal" element. This is not to say that governmental activity was eliminated from entrapment law and had become an irrelevancy—indeed, without governmental activity entrapment does not become an issue. After *Russell,* as before, the purpose of the law of entrapment is curbing governmental activity so excessive as to be unacceptable to a civilized society.

*Hampton* is similar to *Russell.* Justice Rehnquist's plurality opinion refused again

2. The government does not claim that the instruction was correct but insists that the error was harmless.

to enlarge the entrapment defense. It declined to hold that police activity, directed at a defendant whose predisposition was established, was so outrageous as to violate due process. Justices Powell and Blackmun concurred in the result but declined to join in Justice Rehnquist's view that, no matter what the circumstances, neither due process nor the Court's supervisory power could bar a conviction if the government could prove predisposition. Justices Brennan, Stewart and Marshall dissented, calling for application of the *Sorrells-Sherman* minority view to the situation where a government agent "sets up" the defendant by supplying him with contraband and then brings in an agent as a potential purchaser.

Thus, the interplay of governmental activity and predisposition in the entrapment defense remains after *Russell* and *Hampton.*

We have examined the entire jury charge to see if the erroneous instruction was harmless error. Nothing else in the charge salvages it.

The convictions are REVERSED.

GEE, Circuit Judge, dissenting.

I respectfully dissent.

The majority seems to me to reverse because Tate and Delgado were not accorded a perfect trial—only a fair one. But live criminal trials partake unavoidably of a certain catch-as-catch-can quality; and the application of so fine a degree of technical hindsight as this to the trial judge's rulings and instructions, where no substantial harm can possibly have been suffered, tends to produce a most undesirable, almost capricious, unevenness and uncertainty of result.

The majority reverses this case because, parsing the charge in relevant part sentence by sentence, it concludes the jury may have thought that *if* the defendants presented no evidence of entrapment, then the government was not required to prove predisposition beyond a reasonable doubt. Whatever its merits as an abstract proposition, this reasoning can have no practical application here. For here each defendant took the stand and, testifying at length, accused the government informant of all manner of harassment, intimidation and duress which overpowered his resistance and drove him to his criminal act. It is quite inconceivable this jury could have thought, in the real world of this case, that *neither*[1] defendant "presented evidence" on the point and impossible that the error, if such it was,[2] harmed anyone.

The same observations apply to the second error which the majority claims to discern: a failure by the judge to tell the jury how much of such evidence the defendants had to present in order to have "presented such evidence." In the first place, each defendant gave the informer his best shot: *whatever* quantum of evidence was required, theirs was enough. Had the jury believed them, it could not have avoided finding government inducement to the crime beyond a reasonable doubt. In the second, when a jury has been told that all a defendant must to do discharge his burden is "present evidence," surely any reasonable juror would conclude that when he has presented *any* evidence on the point, he has "presented evidence." And here, as I have noted, both defendants presented a most gracious sufficiency. Their problem was that the jury did not believe their evidence; it could never have believed they *presented* none.

Regretting that this effort to enforce the law has foundered on abstract propositions and demonstrably harmless error, I dissent.

---

1. The jury was charged that evidence presented by either one sufficed, *supra*, at 1343.

2. *Pierce,* cited and relied on by the majority, notes ". . . we have held that the burden of proving inducement rests on the defendant." 414 F.2d, at 167.