**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gregory James THOMAS,**
**Defendant-Appellant.**

**No. 85-1023**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1985.

Gregory James Thomas, Bedford, Tex., pro se.

Charles Tessmer, Dallas, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., J. Michael Worley, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, TATE and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant, Gregory James Thomas, appeals his conviction of conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. section 846 and distribution of cocaine and aiding and abetting in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2. We affirm.

## FACTS AND PROCEEDINGS BELOW

Appellant, Thomas, was indicted along with M.D. Gates for conspiracy to distribute and to possess with the intent to distribute cocaine in violation of 21 U.S.C. section 846 (Count One); distribution of cocaine and aiding and abetting in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2 (Count Two); and possession with intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2 (Count Three). Appellant alone was indicted for use of a communication facility in the distribution of cocaine in violation of 21 U.S.C. section 843(b) (Count Four). Gates pleaded guilty to a superseding information alleging conspiracy to distribute cocaine, and appellant proceeded to trial alone. The government waived Count Three, and the district court dismissed Count Four on the first day of trial. The jury found appellant guilty on both counts One and Two. He was sentenced to serve one year and one day on Count One and two years on Count Two, with three years special parole. The sentence on Count Two was probated for five years and was to run consecutively with the sentence on Count One.

Appellant was convicted on these charges for arranging the sale of two ounces of cocaine for $5,000 by M.D. Gates to a Drug Enforcement Administration (DEA) undercover agent, Ronald Lombardi. Appellant's defense was based on entrapment and lack of criminal intent. At trial, much of the testimony was undisputed. Appellant was employed by American Airlines as a ticket agent. In September 1982, the airline transferred him from Detroit, Michigan to Dallas, Texas. His wife and four daughters remained in Detroit until October of 1983, and appellant flew to Detroit every weekend during that year to be with his family.

Appellant's neighbor in Detroit, Vern Bahneman, had become an informant for the F.B.I. In the summer of 1982, shortly before appellant moved to Dallas, Bahneman introduced appellant to an undercover F.B.I. agent, Steven Butler. Appellant discussed with Butler the possibility of setting up a drug courier operation using his connections with the airline. At a meeting in Dallas on September 25, 1982, appellant introduced Butler and Bahneman to various individuals allegedly involved in the manufacture and distribution of phencyclidine (PCP). At a meeting in January of 1983, appellant discussed the proposed operation to transport controlled substances, and, in fact, delivered a small sample of PCP to Butler.

Based on these conversations and events, Butler informed DEA agents in Dallas about appellant, and, on March 31, 1983, he introduced appellant to undercover agent Ronald J. Lombardi. All subsequent contacts between appellant and Lombardi were initiated by Lombardi. In his meetings with Lombardi, appellant discussed details of the proposed drug courier operation and indicated that he could deliver kilograms of various controlled substances on a monthly basis. Lombardi suggested that he would like to buy a smaller amount in order to test the quality of the product that appellant could deliver. He arranged with appellant to purchase two ounces of cocaine for $5,000 as a sample.

On July 8, 1983, Lombardi twice telephoned appellant to arrange the meeting. These conversations were taped and played for the jury. The meeting took place at 5:00 p.m. at the Hilton Hotel in Arlington, Texas. At that meeting, appellant introduced Lombardi to M.D. Gates. Gates and Lombardi left the Hilton bar to transact the sale and returned about fifteen minutes later. As appellant and Lombardi subsequently exited the bar together, Lombardi placed an unsolicited tip of $100 in appellant's hand. Gates gave the entire $5,000 from the sale to his supplier, an individual named Manuel. Lombardi made no further attempts to contact appellant. Appellant was not arrested for this offense until May 1984.

While not disputing any of the above facts, appellant argued at trial that he lacked the criminal intent to commit the offenses for which he was indicted and that

he was entrapped by Bahneman, Butler, and Lombardi. *See United States v. Henry,* 749 F.2d 203, 211 (5th Cir.1984) (en banc) (it is not impermissibly inconsistent for an accused to claim that his admitted acts were without criminal intent, but that nevertheless any act so committed was induced by governmental entrapment). Appellant testified that Bahneman convinced him that he was a member of a Mafia-style crime organization, and appellant felt that Bahneman was capable of killing him and his family if it appeared that he was not able to carry out illegal activities. He therefore decided to play along with Bahneman and his associates until he could move his family to Dallas. Butler, however, testified that appellant had told him that he had been actively involved in the transportation of illegal drugs for two or three years; that "he was trying to get something up in Dallas," and "he wanted to arrange a meeting between some of his people and myself."

As for the drug transaction of July 8, 1983, for which he was convicted, appellant testified that he thought that if he did not cooperate with Lombardi, it would get back to Bahneman and Butler. Appellant stated that Butler had introduced Lombardi to him as a Mafia business associate who was relocating in the Texas area. Appellant further testified that he was surprised that Gates was actually able to deliver two ounces of cocaine, implying that he never expected the deal to be consummated. He also insisted that he did not know that it was illegal for him to introduce people to each other for the purpose of engaging in a narcotics transaction when he was not personally involved and did not receive any money.

## DISCUSSION

### Sufficiency of Evidence

Appellant asserts that there is insufficient evidence to support his conspiracy conviction, claiming that the government failed to prove beyond a reasonable doubt that an agreement existed between him and Gates to possess with intent to distribute and to distribute cocaine. He timely moved for, and was denied, a judgment of acquittal on this issue. This Circuit has stated the standard of review for sufficiency of evidence:

"It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Thus, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

█ "In a conspiracy case, the government must prove beyond a reasonable doubt that two or more persons agreed to commit a crime and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Leon,* 679 F.2d 534, 540 (5th Cir.1982); *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982); *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). In this case, there was evidence based upon which the jury could have found that an agreement existed between appellant and Gates to distribute cocaine to Lombardi since appellant admitted that he arranged for Gates to sell the cocaine to Lombardi, and Gates confirmed this fact. The jury was free to disbelieve appellant's assertion that he did not expect Gates to be able to produce the cocaine and that he therefore did not intend for any sale to take place. His assertion that the government was required to adduce specific evidence of particular conversations or contacts with Gates prior to the date of the

transaction in order to prove a conspiracy is incorrect.

■ Appellant's argument that "[a] single sale of narcotics, without more, does not establish a conspiracy," is inappropriate under the facts of this case. The Sixth Circuit has stated that "the single-sale defense applies only in two situations, ...: (1) when the buyer and seller are the only two participants and (2) where the buyer is a minor figure in a complex conspiracy so as to raise questions of whether he knew of the scope of the conspiracy." *United States v. Hamilton*, 689 F.2d 1262, 1272 (6th Cir.1982), *cert. denied sub nom. Wright v. United States*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). Cases cited for this proposition by appellant involve situations in which it could not be shown that the party appealing had participated in the conspiracy charged. In this case, there is sufficient evidence to show that appellant made an agreement with Gates to distribute cocaine to Lombardi.

## Entrapment Instruction

■ Appellant contends that the trial court, in instructing on the entrapment defense[1] failed to explain that it was the government's burden to prove beyond a reasonable doubt that he was predisposed to commit the offense in order to convict him. Appellant seems to be making two arguments—that the jury was not properly instructed to decide the issue of whether he had the requisite criminal intent apart from governmental inducement and that the jury was not specifically instructed that it is the government which bears the burden of proving beyond a reasonable doubt that he was predisposed to commit the crime. As to the first contention, the fourth and fifth paragraph of the charge (as quoted in note 1, *supra*) clearly instruct the jury that they were to find that the appellant was not a victim of entrapment if they should find beyond a reasonable doubt, from the evidence presented, that appellant was ready and willing to commit an offense such as

1. Over appellant's objection, the trial court refused to give his requested charge to the jury on entrapment:

> "Therefore, you are instructed that once the defendant has introduced some evidence that he had no predisposition to commit the crimes charged, the burden is on the government to prove beyond a reasonable doubt that the defendant, GREGORY JAMES THOMAS, was predisposed to commit the offenses alleged in the indictment; that is, he was ready and willing without persuasion by an agent of the government or an informer or person working with, for, or in behalf of the agent.
> "The term persuasion means the use of any appeal to the defendant to commit the crimes charged beyond the mere offer of the opportunity to commit the charged crimes.
> "Therefore, if you find from the evidence that the defendant, GREGORY JAMES THOMAS, was not predisposed to commit the crimes charged, or you have a reasonable doubt thereof, then you must find the defendant, GREGORY JAMES THOMAS, not guilty of the crimes charged."

The trial court instead gave the following instruction on entrapment:

> "The defendant asserts that he was a victim of entrapment as to the offense charged in the indictment.
> "Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or

their agents to commit a crime, he is a victim of entrapment, and the law as a matter of personal poli—public policy forbids his conviction in such a case.
> "On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment. For example, it is not entrapment for a government agent to pretend to be someone else or offer, either directly or through an informer or other decoy, to engage in an unlawful transaction.
> "If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit a crime such as charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.
> "On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty."

that charged whenever an opportunity, such as that offered by the government officers and agents, was afforded; but, on the other hand, that if the evidence left them with a reasonable doubt as to whether he had a previous intent or purpose to commit such an offense, apart from the government's inducement, they must find him not guilty. This charge adequately explained the jury's duty in considering the entrapment defense.

■ Moreover, the charge requested by appellant could have caused the kind of confusion which was considered to be reversible error in *United States v. Tate*, 554 F.2d 1341 (5th Cir.1977). The *Tate* Court pointed out that the question of whether sufficient evidence of governmental involvement has been introduced to raise the defense of entrapment is a question of law for the court to determine, and, therefore, the jury instruction should not describe this issue for decision because to do so would allow the jury erroneously to second-guess a ruling of law which the court had already made. The entrapment instruction given in that case[2] improperly placed before the jury the question of law as to whether the defendants discharged their burden of presenting evidence of inducement, so as to allow them to raise the defense of entrapment, which could have resulted in the jury's never reaching the issue of whether the government had proved beyond a reasonable doubt that the defendant's predisposition, and not inducement, was the cause of the crime. *Id.* at 1344. Appellant's requested instruction similarly described that issue for decision by stating: "You are instructed that once the defendant has introduced some evidence that he had no predisposition to commit the crime charged, the burden is on the government

to prove beyond a reasonable doubt that the defendant, Gregory James Thomas, was predisposed to commit the offenses alleged in the indictment...." From such an instruction the jury could have been left with the impression that it was free to determine that the defendant had not even raised the defense of entrapment, and if it determined that he had not, that it need not consider whether the government had met its ultimate burden by proving beyond a reasonable doubt that predisposition and not inducement was the cause of the crime.

■ Appellant also argues that the jury instruction on entrapment must specifically state that: "[t]he burden is on the Government" to prove the defendant was not entrapped but was predisposed to commit the crime. However, the charge must be read as a whole. The referenced fourth and fifth paragraphs clearly state the beyond-a-reasonable-doubt standard as applicable to entrapment, and the jury had already been charged that "the government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so you must acquit him," that "the government has the burden of proof," and that "[t]he burden is always on the prosecution to prove beyond a reasonable doubt every essential element of the crime charged." The beyond-a-reasonable-doubt standard was likewise emphasized in several other places in the charge.

### Conflicting Charge

■ Appellant contends that the jury charge on Count Two, which instructs as to the substantive offense of distribution of cocaine on theories of principals and of

---

**2.** The offending portions of the instruction in *Tate* stated:

"To raise the defense of entrapment, the defendant has the burden of presenting evidence that a law enforcement officer, or agent of a law enforcement officer, by initiating the illegal conduct himself, induced the defendant to commit the offense....

"If you find that the defendant has presented such evidence, ... then the Government

must prove beyond a reasonable doubt that the inducement was not the cause of the crime, but that the defendant was predisposed to commit the crime—that is, that he was ready and willing to commit the crime in spite of the acts of inducement by the Government agent." *United States v. Tate*, 554 F.2d at 1343.

aiding and abetting is fatally misleading and inconsistent with the charge which instructs as to the theory of agency.[3]

The trial judge carefully instructed the jury as to the elements of the offense charged in Count Two to the effect that appellant could be convicted if the jury found beyond a reasonable doubt that he had personally distributed cocaine with the requisite mens rea, or, under Title 18 U.S.C. section 2, if it found beyond a reasonable doubt that appellant had willfully directed another person to commit the offense or joined with another person to commit the offense, appellant could be convicted of the offense as though he had engaged in the conduct personally. Then, the trial judge went on to instruct that, if the jury found that appellant was guilty of conspiracy as charged in Count One, he could be found guilty of the offenses charged in Count Two for another reason. That is, if the jury first found that the essential elements of Count Two, as previously charged, had been established beyond a reasonable doubt and then further found beyond a reasonable doubt that the act was committed pursuant to the conspiracy by a member of the conspiracy, appellant could be convicted of the offense as though he had engaged in the conduct personally. This portion of the charge is based upon settled law from the United States Supreme Court's decision in *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). This

Court has stated the rule: "Once the conspiracy and a particular defendant's knowing participation in it has been established beyond a reasonable doubt, the defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners." *United States v. Michel*, 588 F.2d 986, 999 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). This Court can affirm such a conviction for substantive offenses based on the *Pinkerton* theory as long as the theory was properly presented to the jury, *United States v. Michel*, 588 F.2d at 999 n. 13; *see also, United States v. Wilson*, 657 F.2d 755, 763 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982), as it was here.[4] Appellant has presented no authority to support his argument that such an instruction is inconsistent with an instruction on principals or aiding and abetting. The cases cited by appellant, *United States v. Martinez*, 496 F.2d 664, 669 (5th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 627, 42 L.Ed.2d 646 (1974), and *United States v. Womack*, 454 F.2d 1337, 1345 (5th Cir. 1972), may be distinguished from the present case in that the trial court in those cases failed to instruct the jury on the elements of the substantive offense as would have been the case here if the charge on Count Two had been eliminated. Having received such an instruction as well as the instruction on the *Pinkerton* theory, the jury could have found co-conspirator

---

**3.** The court's instruction on agency reads:

"If you find a defendant is guilty of conspiracy as charged in Count 1, you may also find the defendant guilty of a substantive offense as charged in any other—in any other—in Count 2 of the indictment, provided that you find that the essential elements of that count as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt:

"First, that the offense defined in the substantive count was committed pursuant to the conspiracy, and

"Second, that the particular defendant was a member of the conspiracy at the time the substantive offense was committed.

"Now, under the conditions just defined, a defendant may be found guilty of a substantive count even though he did not participate in the acts constituting the offense as defined in the substantive count. The reason for this is that a co-conspirator committing a substantive offense pursuant to a conspiracy is held to be the agent of the other conspirators."

**4.** Appellant contends that the *Pinkerton* theory does not apply to a conspiracy under 21 U.S.C. section 846, and, in support of this argument, cites *United States v. Wilson*, 657 F.2d 755, 759 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982). However, Wilson states that the defendant could not be convicted upon the *Pinkerton* theory because the jury had not been so charged. *Id.* at 763.

Gates guilty of committing the offense and appellant guilty under the agency theory.[5]

**Admissibility of Testimony**

Appellant contends that the trial court erred by excluding the testimony of Dan McElroy, a polygraph examiner, as to his personal opinion that appellant is a truthful person. As appellant was attempting to offer this testimony to bolster his credibility as a witness rather than to show a character trait that is pertinent to the crime charged, Federal Rule of Evidence 608 governs. *United States v. Danehy*, 680 F.2d 1311, 1314 (11th Cir.1982); *United States v. Jackson*, 588 F.2d 1046, 1055 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Under Rule 608, evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. Vigorous cross examination and/or the fact that a witness is contradicted by other evidence in the case does not constitute such an attack. *United States v. Danehy*, 680 F.2d at 1314; *United States v. Jackson*, 588 F.2d at 1055. As appellant's character for truthfulness was never attacked by the government, the testimony of McElroy was properly excluded.

Moreover, although Rule 608 imposes no requisite of long acquaintance or recent information about the witness (leaving such information to be elicited on cross examination) for opinion testimony as to a witness's character for truthfulness, it is questionable whether the testimony of a polygraphist as to a person's truthfulness, which is based upon the results of the polygraph test, is truly opinion testimony within the meaning of Rule 608. *United States v. Earley*, 505 F.Supp. 117, 120 (S.D. Iowa), *aff'd on other grounds*, 657 F.2d 195, 198 (8th Cir.1981) (polygraphist expresses his opinion only as to whether the subject of the polygraph examination spoke truthfully or untruthfully on the specific occasion of the polygraph examination not as to the subject's character for truthfulness or untruthfulness). Although appellant specifically states that he is not challenging the trial court's refusal to admit the polygraph results, as the trial judge pointed out in refusing to allow the testimony, allowing McElroy to testify as to appellant's truthfulness seems to be an "incorrect way of putting in the results of his polygraph testing," which pertained to events at issue in the trial.[6] *Cf. Barrel of Fun, Inc. v. State Farm Fire & Casualty Co.*, 739 F.2d 1028, 1033 (5th Cir.1984) (testimony relating results of psychological stress evaluation from person who administered test was properly excluded but court should also have excluded opinion testimo-

---

**5.** Our recent decision in *United States v. Harrelson*, 754 F.2d 1153, 1171–1174, *rehearing denied*, 766 F.2d 186 (5th Cir.1985) deals with the sufficiency of the instructions on a conspiracy offense, not on a substantive offense. Here appellant does not complain on appeal of the instructions on the conspiracy count (other than as respects entrapment, which we have previously discussed). Moreover, we are not concerned here, as we were in *Harrelson*, with a special state of mind (such as malice aforethought or premeditation) required for the object offense of the conspiracy which is of a different character than the state of mind required by the conspiracy instructions.

**6.** The offer of proof was that "McElroy became acquainted with the Gregory James Thomas, defendant in this case, on October 31, 1984, at his office in Irving, Texas; that it is his personal opinion that the defendant, Gregory James Thomas, is a truthful person; further, that Mr. McElroy's business is the administration of polygraph tests. I do not propose to offer any

proof of a result of any test or whether any test was given or not, et. cetera." Later counsel inferred that he would show that McElroy's business was not only giving polygraph examinations but also doing "general investigations."

It was developed in connection with appellant's attempt to have the polygraph test results admitted that McElroy gave a polygraph examination to appellant at his Irving, Texas office on October 31, 1984, the questions relating to the events at issue at trial. The report of this examination concludes "it is the examiner's opinion, based on responses that did appear, that Gregory Thomas was non-deceptive."

In connection with appellant's above stated offer of proof of McElroy's testimony that in his opinion appellant was a truthful person, the district court inquired of appellant's counsel "did he [McElroy] just meet him as a polygraph examiner?" Counsel replied "Yes, Your Honor. He [McElroy] was employed by me to examine the defendant as to all of those things [shown in the report].... He did so. He doesn't know people that know him [defendant]."

ny of witness to the extent based on the inadmissible PSE evidence). Moreover, it is plain that any legitimate probative value which McElroy's testimony might have had would have been "substantially outweighed by the danger of unfair prejudice, ... or misleading the jury ...." Rule 403, Fed.R. Evid.

For the foregoing reasons the judgment is affirmed.

**AFFIRMED.**