**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William George COOK,**
**Defendant-Appellant.**

**No. 85–1621**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1986.

Max Blankenship, William W. Chambers, Fort Worth, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., Terence J. Hart, J. Michael Worley, Asst. U.S. Attys., Ft. Worth, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge.

William George Cook was charged with conspiring along with David Andrew Cook and "others to the Grand Jury unknown" to manufacture phenylacetone, a Schedule II controlled substance, under 21 U.S.C. § 846. He appeals the conviction based on insufficiency of the evidence and erroneous admission of two items of evidence. We are constrained to agree with defendant's position on the first issue, and therefore REVERSE.

*The Facts*

On March 6, 1985, a DEA agent conducting routine surveillance at the Metroplex Chemical Company in Dallas, Texas videotaped commercial transactions at the company that day. At Cook's trial the tape was replayed, and the agent identified Cook as one of two people making a cash purchase of several items including twenty pounds of sodium acetate and forty pounds of phenylacetic acid, two of the three chemicals needed to manufacture phenylacetone. The person with Cook wore a jacket with the name "Morse" on the back. Morse was never indicted or named as a coconspirator.

The government introduced a receipt under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), which purported to represent this purchase. It was not submitted into evidence from or by the chemical company directly, but rather was obtained through the DEA to which the chemical company routinely sends its receipts. Nothing on the face of the receipt indicates who was the purchaser of the items there listed, the purchase price is almost impossible to discern, and the identi-

ty of the items purchased was deciphered only by the DEA agent's testimony that she obtained interpretive information from the company. So deciphered, the alleged receipt for the transaction reflected the purchase of eight gallons of formic acid, eight gallons of formamide, and various pieces of equipment including two reflux condensors, a three-liter heating mantle, a glass connector, two funnels, a one-liter graduated cylinder, and a jar of glass beads.

On March 23, 1985, a person using Cook's driver's license rented a generator from Rent-It, Inc. in Arlington, Texas. The assistant manager who rented the generator was not asked to make an in-court identification of Cook. He did testify that the generator produced as evidence at the trial was similar to the one he had rented, and the serial numbers matched.

On March 24, 1985, at approximately 1:30 a.m. outside Abilene, Texas, a sheriff's deputy spotted a car on the road near an abandoned farmhouse. The car maneuvered strangely, and the deputy approached it. He found two people inside who reported they were looking for a house but did not need the deputy's help. Their driver's licenses indicated the two were Cook and Harold Wayne Morse.

That evening authorities discovered a clandestine laboratory in the nearby abandoned farmhouse. Outside the farmhouse they found David Andrew Cook, defendant's brother, who told them he and others were camping out in the abandoned farmhouse. Inside the farmhouse were found three flasks boiling and refluxing, one of which contained phenylacetone. Along with various other chemicals, authorities discovered the noted generator, a pillbox with "Wm. Cook" written on it, and items of the same type as 14 of 15 of the items listed on the Metroplex Chemical Company receipt, including sodium acetate and phenylacetic acid.

*Sufficiency of the Evidence.*

Defendant contends that there was insufficient evidence to show that he conspired to manufacture phenylacetone.

In *United States v. Stephens*, 779 F.2d 232 (5th Cir.1985), this court described the standard used in reviewing claims of insufficient evidence in criminal cases.

In evaluating the sufficiency of the evidence supporting a conviction, we must interpret the evidence in the light most favorable to the government. We must resolve all conflicts in the evidence in favor of the government, and we must give the government the benefit of every inference which might reasonably be made from the evidence when it is construed favorably to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

*Stephens*, 779 F.2d at 235.

In this case the government was required to show "that two or more persons agreed to commit a crime and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Thomas*, 768 F.2d 611, 614 (5th Cir.1985) (quoting *United States v. Leon*, 679 F.2d 534, 540 (5th Cir.1982)).

We find that a reasonable jury could have concluded beyond a reasonable doubt that defendant paid for the necessary chemicals, that he had rented the generator or had someone rent it for him using his driver's license, and that he had been near the farmhouse the night the laboratory was discovered by authorities. The evidence was insufficient, however, for a reasonable jury to have concluded beyond a reasonable doubt that William Cook knowingly conspired in the unlawful act of manufacturing a controlled substance. This case against Cook is built solely on circumstantial evidence which shows only that Cook associated with Morse, paid for chemicals Morse ordered, and rented a generator. Morse was not indicted. Cook was not located at the scene of the crime, nor was any incriminating connection between him and David Andrew Cook developed in the record. Thus, both the existence of a conspiracy and most important, Cook's knowing participation in it, could not have been established beyond a reasonable doubt.

The videotape evidence, even though its soundtrack is hard to follow, strongly implies that only Morse knew what chemicals and equipment to order; Cook appeared entirely passive, ordered nothing, and did not consult with Morse about anything Morse was ordering. Cook handed the money to the store clerk, but the stack of bills was obviously pre-counted.

Defense counsel properly points out that there is no proof, no serial numbers, fingerprints, or anything else, that the generic chemicals and equipment found at the farmhouse were those seen purchased three weeks earlier on the videotape. The evidence on the tape, due to the presence of other customers and background noise, does not clearly reveal what items Cook and Morse purchased. Moreover, the Metroplex receipt, entered in evidence as a business record,[1] does not establish the necessary connection between Cook's purchase and the chemicals and equipment found at the farmhouse. It bears no information identifying the purchaser of the items and no data, such as serial numbers, that could link the items purchased with those found at the farmhouse. The Metroplex salesman, who appears for twenty minutes on the government's tape and could have supplied at least the connection between the receipt and the defendant, did not testify at trial.

Finally, there is no evidence that Cook was ever in the farmhouse or that he knew what was going on in the farmhouse. The pillbox was not demonstrated to belong to Cook. The generator rental agent was not asked to identify Cook as the man who actually rented the generator. The prose-

---

1. Based on *United States v. Veytia-Bravo*, 603 F.2d 1187, 1192 (5th Cir.1979), *cert. denied* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980), the receipt was properly admitted as a business record of Metroplex. It had the requisite indicia of reliability and trustworthiness as a receipt prepared by and for Metroplex's business activi- ty. The defense failed to object to it as irrelevant, which, in our view, would have made the point that the receipt did not evidence the defendant's purchase, any more than a cash register receipt from a grocery would identify the purchaser of a head of lettuce.

cution made no attempt to connect the address on the pillbox, that on Cook's driver's license, the address on the generator rental slip, and Cook's actual residence.

In short, despite an abundance of promising sources of testimony, the government's circumstantial evidence simply falls short of establishing knowing participation by Cook in a conspiracy to manufacture phenylacetone.

Because we find insufficient circumstantial evidence for a reasonable jury to conclude beyond a reasonable doubt that Cook conspired to manufacture a controlled substance, we need not address appellant's remaining evidentiary point concerning the summary chart. The judgment of the district court is therefore REVERSED.