UNITED STATES of America,
Plaintiff-Appellee,

v.

Jim HUGHES, Wayne Richard Vincent, Issac Davis, Phillip Lee,
Defendants-Appellants.

No. 86–1247.

United States Court of Appeals,
Fifth Circuit.

May 6, 1987.

Rehearing Denied June 25, 1987.

---

Walter M. Reaves, Jr. (Court-appointed), West, Tex., for Hughes & Lee.

Robert O. Harris, III (Court-appointed), Killeen, Tex., for Vincent.

Paul E. Gartner (Court-appointed), Waco, Tex., for Davis.

Thomas Booth, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GEE, REAVLEY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants challenge their convictions arising out of a scheme to manufacture and distribute phenylacetone and methamphetamine, controlled substances, in violation of 21 U.S.C. §§ 841, 846. We affirm.

## I. FACTS

In 1983, Kenneth Jean discussed with his former employer, appellant Hughes, his desire to produce and distribute methamphetamine. Jean confided in Hughes that he needed money to purchase laboratory equipment for the venture. Hughes obligingly introduced Jean to A.H. Vahrenkamp who in turn introduced Jean to a "financial backer," Larry Renick. Renick, Jean, and Vahrenkamp thereupon agreed that Renick would finance the purchase of laboratory equipment if Jean would manufacture and sell the drug to Renick and Vahrenkamp in exchange for a share of profits from resale of the drug.

As planned, Jean purchased the equipment, began manufacturing or "cooking" methamphetamine, and distributed for resale various amounts of the drug on different occasions to Renick, Vahrenkamp, and Hughes. Renick subsequently joined in the methamphetamine manufacture and began to assert control over the amount produced. Renick wanted to limit production and distribution of the drug while Jean advocated expansion. Accordingly, Renick refused to produce and sell several pounds of the drug to Hughes, who had planned to extend his market to California. The disagreement over expansion contributed to Renick's later disassociation with Jean. Following their breakup, laboratory equipment was moved to Renick's ranch near Killeen, Texas, and Renick hired appellant Vincent to assist with the manufacturing and distribution of the drug. Renick also recruited appellant Lee who in turn recruited appellant Davis to distribute the drug.

Ultimately, the four appellants, along with other individuals, including Renick, were arrested and indicted for violating controlled substances laws. Shortly before trial, Renick pleaded guilty and agreed to testify on behalf of the Government. Hughes, Vincent, Davis, and Lee were tried by a jury and convicted of conspiracy to manufacture phenylacetone and methamphetamine, and conspiracy to possess with intent to distribute, and distribution of methamphetamine. Additionally, Hughes and Vincent were convicted of possession with intent to distribute methamphetamine. Vincent alone was convicted of manufacturing methamphetamine.

## II. APPELLANTS' RIGHT TO JOINT REPRESENTATION

Originally, Renick, Vincent, Davis, and Lee each retained as their defense attorney Robert O. "Bucky" Harris, III. The Government moved to disqualify Harris from representing four defendants simultaneously. The court held three hearings over a period of months to resolve this issue and ultimately disqualified Harris from representing Davis and Lee. Harris continued to represent Renick and Vincent. Davis and Lee now contend that the court deprived them of the right to counsel of their choice.[1]

This argument is opportunistic because an actual and serious ethical conflict

---

**1.** Our standard of review for a disqualification order is that of "simple error." *United States v. Snyder,* 707 F.2d 139, 144 (5th Cir.1983).

of interest arose when Bucky Harris negotiated, well in advance of trial, a plea bargain agreement for Renick which required him to testify for the Government. Renick did testify against Davis and Lee. Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* § 124 (1980). Had Davis and Lee been represented at trial by Harris, they might now justly complain that their constitutional right to effective assistance of counsel was abridged. See *United States v. Alvarez*, 580 F.2d 1251, 1257–58 (5th Cir.1978); *Stephens v. United States*, 595 F.2d 1066, 1069–70 (5th Cir. 1979).

■ Be that as it may, a defendant may waive the right to effective assistance of counsel for the sake of being jointly represented by his chosen counsel with a potential conflict of interest. He must make this waiver knowingly, intelligently, and unambiguously. *United States v. Garcia*, 517 F.2d 272, 277–78 (5th Cir.1975).

■ The court under Fed.R.Crim.P. 44(c), is charged to perform an active role in investigating the existence of and solution to any conflict arising from joint representation, and "[u]nless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel." Fed.R.Crim.P. 44(c). The Advisory Committee's Note to Rule 44(c) explains the variety of considerations and approaches to joint representation issues which will concern the district court. The trial court carefully followed Rule 44(c), which leaves most procedural details within its discretion. See *United States v. Benavidez*, 664 F.2d 1255, 1258–59 (5th Cir. 1982), *cert. denied*, 457 U.S. 1121, 102 S.Ct. 2936, 73 L.Ed.2d 1334 (1982). Following the first of three hearings, the court appointed two separate counsel for Davis and Lee to consult with them on the problems inherent in multiple representation, of their rights to independent, conflict-free counsel, and their rights to waive conflict-free counsel.

At the second and third hearings, respectively, Bucky Harris acknowledged to the Court that Renick's plea bargain "would eliminate the fact that I could represent anyone else" other than Vincent and that, after consulting with Davis's and Lee's independent counsel, he would be "uncomfortable" representing them. Although Harris did not move to withdraw as counsel for Davis and Lee, these statements raise a distinct possibility that Harris would have declined to represent Davis and Lee even if they had insisted upon it.

Davis and Lee did not, however, make clear to the court their desire to insist upon Harris's representation. At the second hearing, the court asked Lee what his situation might be if it were determined Harris could not represent him. Lee replied, "If there was a conflict of interest, I would try to seek and get him [Hunt, Lee's court-appointed attorney] to be my attorney. I prefer to have 'Bucky' Harris to be my counsel, unless there is a conflict of interest." At the third hearing, the judge, in front of Davis and Lee, carefully admonished and warned Vincent of the possible hazards and consequences should he proceed to trial with Harris as his attorney. After the court's lecture and warning to Vincent, Davis was asked his desire with respect to counsel and responded, "my desire would be to retain Mr. Gartner, but I need to talk to him in reference to returning [sic] him." Presented with the same question, Lee stated "if Buck Harris can not represent me, I have talked to Mr. Hunt, and discussed with him about being my counsel. More than likely, he's probably going to be my counsel, I need to talk to him before I have an attorney." Under these circumstances, we cannot accept the appellants' factual premise, that they demanded the right to continue to employ Bucky Harris. Because Davis and Lee made no such demand upon the trial court, it is unnecessary to consider whether the procedure set out in *United States v. Garcia*, 517 F.2d at 278, for determining the effectiveness of a waiver of conflict-free counsel, previously described as a "complement" to Rule 44(c), *see Benavidez*, 664 F.2d at 1258 n. 2, was fulfilled.

The trial court's mode of addressing Harris's conflict is not, we emphasize, the only means by which the purposes of Rule 44(c) are achieved. See, e.g., *United States v. Carr*, 740 F.2d 339, 348–49 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). It was, however, more than adequate to assist Davis and Lee to a wise decision to retain separate counsel.

## III. BILL OF PARTICULARS

The indictments returned against the appellants charged each with participation in a conspiracy with certain named coconspirators and with *"others* [conspirators] *known and unknown* to the Grand Jury." (emphasis added). Seeking the names of the known unnamed coconspirators, Vincent, Lee, and Hughes, prior to trial, filed motions for bills of particulars. The district court denied the motions.

■ We have previously held that while a bill of particulars is a proper procedure for discovering names of coconspirators the Government plans to call as witnesses at trial, *United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir.1979), *cert. denied*, 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979), reversal is mandated only in those cases where it is shown that the "defendant was actually surprised at trial and prejudiced in his substantial rights." *United States v. Vesich*, 726 F.2d 168, 169 (5th Cir.1984). Denial of this motion is reviewed under the abuse of discretion standard. *Id.*

Vincent, Hughes, and Lee specifically complain that the district court's denial of their bill of particulars resulted in inexcusably late disclosure by the government of William Edwards, Bethany Hawley, Anthony Shott, A.J. Vahrenkamp, Gary Clark,[2] and James Cater, all of whom testified at trial. Some of these "surprise" witnesses offered no testimony against one or more of the appellants. (Bethany Hawley testified only against Vincent, not Hughes or Lee. Cater's testimony was directed only against Hughes.) Moreover, except in the case of witness Cater, the appropriate appellants were given one or more days notice of the Government's intent to call each of these alleged witnesses.[3]

■ With respect to the "surprise" witnesses, appellants have failed to allege or demonstrate with any specificity the actual prejudice they faced by the Government's delay in identifying the witnesses. Instead, they rely upon a district court case, *United States v. Rodgers*, 617 F.Supp. 1024, 1028 (D.Colo.1985), which held that failure to disclose the names of coconspirators who will be called as government witnesses constitutes per se prejudicial surprise to a defendant. This approach conflicts with previously cited governing authority in the Fifth Circuit which requires actual prejudice to a defendants' substantial rights. E.g., *Vesich*, 726 F.2d at 169; *Barrentine*, 591 F.2d at 1077.

## IV. SEVERANCE

■ Severance is appropriate only when a joint trial would result in specific and compelling prejudice to a defendant. *United States v. Wheeler*, 802 F.2d 778, 782 (5th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). Vincent objects that his conviction was a result of "guilt by association" with codefendants Lee, Davis and Hughes, and that the number of witnesses called in order to effectively try each defendant resulted in piece-meal litigation which fatally confused the jury. Vincent does not argue that his defense was incompatible with that of his co-defendants, and compelling prejudice does not arise merely from the fact that a large number of witnesses testified or that the case was complicated. The district court reminded the jury to consider the case of each defendant separately and individually. Vincent has failed to show com-

---

2. Contrary to appellants' contentions, however, Clark was not a coconspirator but a Killeen policeman who, while operating in his official capacity, "purchased" methamphetamine from an informant.

3. Cater was not prosecuted as a coconspirator—he testified only to checking Hughes's telephone line for wiretaps and to purchasing methamphetamines from Hughes's sons.

pelling prejudice; the trial court did not abuse its discretion in denying this motion.

## V. MOTION FOR NEW TRIAL

Vincent filed a notice to appeal his conviction on April 9, 1986. On August 19, 1986, Vincent filed a motion for a new trial alleging newly discovered evidence, in that a government witness, William Edwards, desired to recant his trial testimony against Vincent.[4] Without conducting a hearing, the district court denied Vincent's motion for a new trial. This was proper.

Federal Rule of Criminal Procedure 33 permits the consideration of a motion for a new trial by the trial court only if an appeal is not pending. When Vincent filed his motion for a new trial, the district court was without jurisdiction to grant it since Vincent had already filed his notice of appeal. *See United States v. Hersh*, 415 F.2d 835 (5th Cir.1969).

## VI. SUFFICIENCY OF EVIDENCE

Vincent, Hughes, and Lee contend that the Government failed to prove them guilty of conspiracy. The Government had the burden of proving beyond a reasonable doubt that two or more confederates knew of and voluntarily joined in a conspiracy to accomplish an unlawful purpose. *United States v. Montemayor*, 703 F.2d 109, 115 (5th Cir.1983), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). All three appellants argue that they were mere buyers of methamphetamine, and as buyers, the requisite evidence of a conspiratorial agreement was not met. While it is true that a buyer-seller relationship, without more, will not prove a conspiracy, *United States v. Apollo*, 476 F.2d 156, 161–62 (5th Cir.1973), *overruled on other grounds, U.S. v. James*, 590 F.2d 575 (5th Cir.1979), the evidence at trial, recounted in part above, plainly established that these three defendants were active participants in the conspiracy, not mere buyers. Hughes and Vincent were major organizers of the business. It

need only be added that Lee purchased the drugs on credit from Renick and paid Renick after the drugs had been resold, and he introduced Renick to Clarence Mathis who eventually became one of Renick's distributors. Lee also recruited as distributors his brother, Promise Lee, appellant Davis, and William Edwards. Under the standard of review prescribed in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Government bore its burden successfully.

Davis's complaint concerning improper prosecutorial closing argument is meritless.

The district court's judgments of conviction are AFFIRMED.

---

**4.** Apparently, Edwards contacted Vincent's attorney, Harris, and told Harris that he had falsely testified against Vincent. Edwards refused, however, to give a sworn deposition or sign an affidavit on the matter.