**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 90-2783

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSEPH MICHAEL MASERATTI, GABRIEL RUIZ,
MIGUEL ROCHA, JUAN MANUAL ZAMORA,
JOHNNY DAVIS, JOSE SILVA, DAVID PIERATT,
BONIFACIO FILOTEO, DEBORAH ANN GARZA,
SEVERO GARZA, JR., and RAMIRO GONZALES ALVARADO,

Defendants-Appellants.


_____

No. 91-2088

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOHNNY DAVIS,

Defendant-Appellant.

_____

No. 91-2332

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROQUE URDIALES GARCIA,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas
_____
(August 27, 1993)

Before REAVLEY, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Twelve of 28 defendants challenge their drug conspiracy convictions arising out of a large marijuana and cocaine enterprise. We affirm. Eight also contest their sentences. We vacate six of their sentences and remand those six for resentencing.

## Background

This case involves a very large and long lasting drug conspiracy. In a 40 count indictment, the Appellants, along with 16 others, were charged with conspiracy to possess cocaine with intent to distribute (Count 1), conspiracy to possess marijuana with intent to distribute (Count 2), conspiracy to import cocaine (Count 3), possession of cocaine with intent to distribute (Counts 4, 9, 26, 29), distribution of cocaine (Counts 5, 10, 27), possession of marijuana with intent to distribute (Counts 6, 12), distribution of marijuana (Counts 8, 16), importation of cocaine (Count 31), use of the telephone to facilitate drug trafficking (Counts 13-15, 17-25, 28-30, 32-38), continuing criminal enterprise (Count 40), and travel in interstate commerce to facilitate drug trafficking (Counts 7, 11), all in violation

of 21 U.S.C. §§ 841(a)(1), 846, 963, 843(b), and 848, and 18 U.S.C. § 1952.

Appellant Roque Garcia operated this extensive marijuana and cocaine trafficking enterprise in Houston. Appellants Zamora, Rocha, Silva, Pieratt, and Ruiz at various times assisted in the distribution of the drugs. For most of the conspiracy's duration Garcia used an apartment in Houston as his headquarters, but the drugs were stored elsewhere, including the homes of Silva and Zamora. Appellants Alvarado and Filoteo supplied some drugs, and appellants Severo and Deborah Garza maintained a supply of marijuana for the enterprise at their home. Appellants Davis and Maseratti were regular customers of the enterprise.

By means of surveillance, a pen register, and a wire tap, the DEA closely observed the Garcia enterprise for approximately a year. At various times during the DEA's investigation, arrests were made and drugs were confiscated. The DEA was careful, however, to stage the arrests so that they appeared not to be connected to the surveillance. By the time all was said and done, the DEA had indicted 28 persons connected with the Garcia enterprise. After a jury trial, all Appellants were convicted on all counts in which they were charged.

The Appellants raise numerous claims on appeal. They contend (1) the government's exercise of peremptory challenges violated the Fifth Amendment, (2) the court's refusal to give a buyer-seller jury instruction was error, (3) the court's refusal to dismiss a juror who, during the trial, applied for a

3

government job was error, (4) the importation conspiracy was improperly joined with the domestic conspiracies, (5) Appellant Davis' car was unlawfully searched, (6) the wiretap order was unlawfully issued, (7) a fatal variance exists between the conspiracies charged and the conspiracies proven, (8) the evidence was insufficient to support the convictions, and (9) the sentences were unlawfully imposed. We consider each in turn.

I. Batson Challenge. The Appellants argue that the government used three of its peremptory strikes to exclude prospective jurors; two black females, and one Hispanic female, solely because of their race and ethnicity in violation of Batson v. Kentucky, 476 U.S. 79 (1986) and the Fifth Amendment. Appellants objected to the strikes and the prosecutor gave the following explanations:

One black woman was struck because "she appeared to be sleeping during part of the voir dire." The second black woman was struck because she also was not paying attention during the voir dire, and because the prosecutor did not like the fact that she was a City of Houston employee. The Hispanic woman was struck because:
It was my impression

from my experience in

Hispanic culture that she
might tend to be
sympathetic toward Debbie
Garza's predicament in
that she basically is
doing what the male in
the species is telling

4

                    her to do, and might be
                    too sympathetic . . . .

The district court overruled Appellants' <u>Batson</u> objection.

     The Supreme Court held in <u>Batson</u> that a defendant can establish an equal protection violation based on the government's use of peremptory challenges to remove black potential jurors in his case.  <u>Batson</u>, 476 U.S. at 96.  If the defendant establishes a prima facie case that the prosecutor used peremptory challenges to remove potential jurors because of their race, the burden shifts to the prosecutor to provide race neutral explanations. The court must then determine, in light of all of the facts and circumstances, whether the defendant has carried his burden to establish purposeful discrimination.  <u>Id.</u> at 94-98.

     When Appellants objected to the prosecutor's exercise of peremptory challenges in this case, the court, without expressly determining whether a prima facie case was made out, asked the prosecutor to explain his challenges.  In <u>Hernandez v. New York</u>, 111 S.Ct. 1859 (1991), the Supreme Court stated that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."  <u>Id.</u> at 1866.

     In evaluating the race-neutrality of an attorney's explanation, we must determine whether the challenges violate the Fifth Amendment as a matter of law.  <u>Id.</u> at 1866.  Proof of racially discriminatory intent or purpose is required to show a

5

violation of the Fifth Amendment. <u>Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 264-65 (1977). "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." <u>Hernandez</u>, 111 S.Ct. at 1866 (citations omitted).

Before addressing the merits of Appellants' argument, however, we address the matter of timeliness. The trial court questioned the timeliness of Appellants' <u>Batson</u> objection because they asserted their objection after the unselected venirepersons had been dismissed. One defense lawyer voiced his impression that a <u>Batson</u> claim was timely until the jury was sworn. The court's subsequent general denial of relief does not indicate whether timeliness was the basis for its ruling. No one requested clarification.

The notion that a <u>Batson</u> claim is timely until the jury is sworn is incorrect. This Court has held "that to be timely, the <u>Batson</u> objection must be made before the venire is dismissed and before the trial commences." <u>United States v. Romero-Reyna</u>, 867 F.2d 834, 837 (5th Cir. 1989), <u>cert denied</u>, 494 U.S. 1084 (1990). Therefore, this <u>Batson</u> claim can be dismissed as untimely.[1] Even

_____

[1] Although it is not crystal clear in the record that the veniremen had been dismissed, we see no reason for the trial judge to raise the issue otherwise. Additionally, once the venire was dismissed from the courtroom, the opportunity for them to be tainted was too great, and it was the responsibility of the

6

considering the merits of the claim, however, we conclude that the district court's ruling is correct.

While the prosecutor's explanation with regard to the Hispanic woman appears on its face to offend Hernandez, the fact that he seated another Hispanic female and that the prosecutor himself is Hispanic shows that this challenge was particular to this female and not a "stereo typical assumption" or a "gross racial stereotype or anecdotal generalization" about Hispanics. See Hernandez, 111 S.Ct. at 1867; United States v. Greene, 53 Cr. L. 1003 (C.M.A. No. 67297, February 25, 1993).

As to the two black women excluded, the explanations given by the prosecutor were clearly race-neutral, and Appellants' arguments are without merit.

II.  Buyer-Seller Instructions.    Ten of the twelve Appellants argue that the trial judge erred when he refused to give a buyer-seller instruction to the jury in the course of his discussion of the law of conspiracy.  We disagree.

During the charge conference, the Appellants requested a charge based on United States v. Hughes, 817 F.2d 268, 273 (5th Cir. 1987), cert denied, 484 U.S. 858 (1987), which included language to the effect that the existence of a mere buyer-seller relationship in and of itself is not sufficient to prove a conspiracy.  They also requested that the multiple conspiracy

---

Defendants, as the movers, to insure that the integrity of the jury security was preserved.

charge submitted contain similar language.  The court denied
these requests.

Appellants are entitled to an instruction on any recognized
defense for which there exists evidence sufficient for a
reasonable jury to find in their favor.  Mathews v. United
States, 485 U.S. 58, 63 (1988)(citations omitted).  As we stated
in United States v. Schmick,[2] "it is reversible error to refuse a
charge on a defense theory for which there is an evidentiary
foundation and which, if believed, would be legally sufficient to
render the accused innocent."  However, a trial judge is "under
no obligation to give a requested instruction that misstates the
law, is argumentative, or has been covered adequately by other
instructions."  United States v. L'Hoste, 609 F.2d 796, 805 (5th
Cir.), cert. denied, 449 U.S. 833 (1980)(citations omitted).

While it is true that a buyer-seller relationship, without
more, will not prove a conspiracy,[3] evidence of such activity
goes to whether the defendant intended to join in the conspiracy
or whether his or her participation was more limited in nature.
The questions of whether a defendant is a buyer/seller, and
whether a defendant is a member of a conspiracy are mutually
exclusive.  When Congress enacted the current drug laws, it
eliminated references to selling drugs as the basis for criminal
activity, and substituted the broader concept of distribution as

---

[2]   904  F.2d  936, 943 (5th Cir. 1990), cert denied, ---
U.S. ---, 111 S.Ct. 782 (1991).

[3]   Hughes, 817 F.2d at 273.

8

the prohibited conduct. United States v. Johnson, 481 F.2d 645, 647 (5th Cir. 1973). As a result, the procuring agent defense was eliminated. Id. Conspiracies, and culpable parties thereto were expanded. One becomes a member of a drug conspiracy if he knowingly participates in a plan to distribute drugs, whether by buying, selling or otherwise. The drug conspiracy laws focus on whether the participants knowingly joined an agreement to distribute drugs in violation of the law. We conclude that if the evidence showed that a defendant is merely a buyer or seller, the elements necessary to prove a conspiracy would be lacking, and a not guilty verdict would result. In this case, the jury instruction given by the court accurately reflected the law on conspiracy. The buyer-seller relationship has been adequately covered by this other instruction. L'Hoste, 609 F.2d at 805.

III. Juror seeking job with GSA. The Appellants argue that the court erred in not excusing a juror who, during trial, sought employment as a security guard with the General Services Administration (GSA). About 4 weeks into trial, the Defendants advised the court that Juror Cardenas was repeatedly seen going into the GSA security office in the courthouse during breaks and lunch periods. They asked the court to question Cardenas and GSA regarding whether Cardenas was seeking employment with them. The court refused. Several days later, the Defendants renewed their request. Apparently, Mr. Cardenas had continued to visit the GSA

office on a daily basis.  The defense requested that Cardenas be replaced with an alternate juror.

Prior to submitting the case to the jury, the court finally agreed to let defense counsel question Cardenas about his activities.  Cardenas admitted that he was visiting with the GSA security officers and that he had applied for a position as a security guard.  He testified that he had received a positive response to his application pending his passing several tests.  Cardenas also testified that this would not affect his ability as a juror.  Defense counsel requested that he be removed, but the court refused.

We review for abuse of discretion.  United States v. O'Neill, 767 F.2d 780, 785 (11th Cir. 1985).  Appellants had the burden of proving by a preponderance of the evidence that Cardenas was actually biased.  De La Rosa v. Texas, 743 F.2d 299, 306 (5th Cir. 1984), cert denied, 470 U.S. 1065 (1985); Smith v. Phillips, 455 U.S. 209, 215-18 (1982).[4]  Appellants have failed to carry this burden.  Even if Cardenas had held a job as a security guard with the GSA at the time of jury selection, he would not have been ineligible to serve as a juror.  Tinsley v. Borg, 895 F.2d 520, 529 (9th Cir. 1990), cert denied, 498 U.S. 1091 (1991).  The district court acted completely within its discretion.

---

[4]  The appellants contend that the facts in this case are so extreme that they fit the situation Justice O'Connor described in her concurring opinion in Smith, and that they only have to show implied bias.  We disagree.

10

IV.  Sufficiency of the Evidence.  All Appellants except Garcia, Zamora, and Silva challenge the sufficiency of the evidence supporting some or all of the counts of which they were convicted.    Before addressing the individual claims, we set forth the principles governing our review of sufficiency issues. We examine the evidence, together with all credibility choices and reasonable inferences, in the light most favorable to the government.  United States v. Rena, 981 F.2d 765, 771 (5th Cir. 1993).  The verdict must be upheld if the court concludes that any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt.  Id. at 770.  The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.  United States v. Lopez, 979 F.2d 1024, 1028 (5th Cir. 1992), cert denied, --- U.S. ---, 113 S.Ct. 2349 (1993). The government, however, must do more than pile inference upon inference.  United States v. Cardenas Alvarado, 806 F.2d 566, 570 (5th Cir. 1986).  Finally, the standard is the same whether the evidence is direct or circumstantial.  Rena, 981 F.2d at 771.

In a narcotics conspiracy prosecution, the government must prove beyond a reasonable doubt:  (1) that an agreement to violate the narcotics laws existed between two or more persons, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy.  United States v. Medina, 887 F.2d 528, 530 (5th

11

Cir. 1989); United States v. Guerra-Marez, 928 F.2d 665 (5th Cir.), cert. denied, --- U.S. ---, 112 S.Ct. 322(1991). Proof of any element may be by circumstantial evidence, and "'[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, . . . be sufficient to constitute conclusive proof.'" United States v. Roberts, 913 F.2d 211, 218 (5th Cir. 1990), cert. denied, --- U.S. ---, 111 S.Ct. 2264 (1991) (quoting United States v. Lechuga, 888 F.2d 1472, 1476 (5th Cir. 1989)).

After a careful review of the record, we conclude that, viewed in the light most favorable to the verdict, the evidence is sufficient as to all defendants.

Appellants Maseratti, Filoteo, Alvarado, and Davis contend that they should not have been convicted of conspiracy to possess either marijuana or cocaine, or both, because the evidence proved only a buyer-seller relationship between them and the Garcia enterprise. Although a buyer-seller relationship, without more, will not prove a conspiracy, the evidence was sufficient for the jury to conclude that the activities of these Appellants went beyond that of a mere buyer-seller.[5] See Hughes, 817 F.2d at 273; United States v. Thomas, 768 F.2d 611, 615 (5th Cir. 1985).

Maseratti was a repeat marijuana customer. As early as June 7, 1989, telephone conversations concerning drug distribution

_____

[5] Distribution means "to deliver . . . a controlled substance." 21 U.S.C. § 802(11). The statute defines "deliver" as the "transfer of a controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8).

12

intercepted between Roque Garcia and another defendant, Ayala, made reference to Maseratti as the "white guy". Garcia apparently knew the identity of the individual so referred to. The jury could easily infer that Maseratti's involvement began before that phone call.

On July 1, 1989, Maseratti went to Apartment 603 (Garcia's headquarters), and in the presence of Garcia and others, he rejected the cocaine offered to him because of its off-color, but agreed to take all of the marijuana.[6] This evidence showed that Maseratti knew that the Garcia organization had other members and that Maseratti assisted in purchasing drugs for resale. The evidence is sufficient to show that Maseratti knowingly intended to join and did join in the conspiracy to distribute marijuana.

Davis was also a repeat marijuana and cocaine customer. Davis knew Garcia and Zamora operated the business out of apartment 603, and Davis was seen there many times. Garcia furnished Davis with cocaine in up to half-kilogram quantities and more than 100 pounds of marijuana. This evidence supports the conclusion that Davis was a knowledgeable participant in the marijuana and cocaine conspiracies.

Filoteo and Alvarado were suppliers to the Garcia enterprise. They admit to an "occasional deal" with Garcia, but contend that since they did not control the organization or share in its profits, their buy-sell conduct cannot be deemed part of the

_____

[6] Maseratti had previously placed his drug order over the phone to Garcia, thus sustaining his conviction for use of the telephone to facilitate drug trafficking.

13

conspiracy charged. However, even a single act can be one from which knowledge and participation in a conspiracy can be inferred. United States v. Michelena-Orovio, 719 F.2d 738, 751 (5th Cir. 1983)(en banc), cert. denied, 465 U.S. 1104(1984). Filoteo and Alvarado furnished the drugs which Garcia then sold to Maseratti. They were in the process of making another delivery of marijuana to Garcia when they were arrested. This is adequate evidence that Filoteo and Alvarado were willing participants in the Garcia conspiracy.

Rocha, Ruiz and Pieratt make "mere presence" arguments. The evidence, however, examined in its totality, shows that these defendants were knowing participants in the Garcia scheme. Rocha was convicted in both the conspiracy to import and to distribute cocaine. He was involved in the plan to import cocaine from its outset. A number of phone calls were intercepted which provided ample proof of his knowledgeable participation. In fact, Rocha expressed his belief to Zamora that Garcia had placed himself and Zamora in charge of this operation. Rocha was observed coming and going from the warehouse where the cocaine-laden truck was concealed. He also made a number of intercepted phone calls and hard wire transmissions from the Garcia apartment headquarters.

Ruiz was convicted of conspiracy to distribute marijuana and two uses of the telephone to facilitate marijuana distribution. On June 29, 1989, Ruiz called Garcia looking for "work". DEA officers testified that "work" is a code word often used to mean marijuana. During the call, Ruiz provided Garcia with directions to his place

14

of business.  On July 5, Ruiz telephoned Zamora and advised Zamora that he would be coming to the apartment to deliver some "invoices" that he had already "cleaned."  Based on the officer's testimony, the jury could conclude that Ruiz was thus planning to make a payment for drugs.  Additionally, Ruiz, Zamora, and another associate met at a Whataburger restaurant from which Zamora's car was driven to Ruiz's place of business.  This conduct is consistent with the delivery of drugs.

Pieratt was convicted of the marijuana conspiracy, possession of marijuana with intent to distribute, and distribution of marijuana.  He was apparently Arnold Hatton's link to the Garcia enterprise.  He was observed at the Garcia apartment several weeks before Hatton's car was loaded with marijuana.  Pieratt was then involved in the car switch which resulted in Hatton's car being loaded with 201 pounds of marijuana.  He drove the loaded car to the hotel where Hatton was staying.  A surveillance officer testified that he observed Pieratt open the trunk and remove something before he delivered the car to Hatton.  Hatton was later stopped by officers with the car trunk full of marijuana.  This is adequate evidence that Pieratt was involved in the marijuana conspiracy.

Finally, the Garzas also argue that they were mere occasional sellers of marijuana to the Garcia enterprise. Marijuana wrappers which had contained significant amounts of marijuana were discovered in the Garzas' garbage.  This discovery was made shortly after Roque Garcia and his brother left a meeting at the Garza

15

home.  Additionally, a ledger detailing a large quantity of marijuana sales was discovered in the Garza's house.  It showed sales to Roque Garcia.  Although other persons may have also lived in the house, the government proved that the Garzas were the lawful occupants.  The jury was entitled to believe that the Garzas were the sellers of marijuana to the Garcia enterprise and that their involvement went beyond a single incident.

In conclusion, after a careful review of the record, we conclude that, viewed in the light most favorable to the verdict, the evidence was sufficient as to all Appellants.


V.  Sentencing.  Eight of the Appellants raise sentencing issues. The issues fall into four categories:  computation of accountable drugs, minor or minimal participant, acceptance of responsibility and use of a firearm.

The standard of review is statutorily defined.  The sentence must be upheld unless the appellant demonstrates that it was imposed in violation of the law, was imposed as a result of an incorrect application of the guidelines, or was outside the range of the applicable guidelines and was unreasonable.  18 U.S.C. § 3742(e); United States v. Ebertowski, 896 F.2d 906, 907 (5th Cir. 1990).  This Court must give "due regard to the opportunity of the district court to judge the credibility of witnesses" by accepting its findings of fact unless they are clearly erroneous.  18 U.S.C. § 3742(d).  Beyond even the clearly erroneous standard, this Court must give due deference to the district court's application of the

16

guidelines to the facts.  Id.; see United States v. Woolford, 896 F.2d 99, 103-04 (5th Cir. 1990).

1. Computation of Accountable Drugs.  Filoteo, Alvarado, Davis, Maseratti and the Garzas question the propriety of holding them accountable for more than the amount of drugs in the specific incidents in which they were personally involved.  In Filoteo and Alvarado's cases, at the sentencing hearing the court held them responsible for all 914 kilograms of marijuana proved to be handled by the Garcia enterprise, but they accepted responsibility only for the 35 kilograms seized at the time of their arrest and 50 kilograms discussed in a telephone conversation with Garcia.  Davis admitted responsibility only for the cocaine directly attributable to him and Buford Lachney, and he strongly opposed being held accountable for the 144 kilograms of cocaine seized from a warehouse on July 18, 1989.  The court held Davis responsible for all the cocaine and marijuana involved in the conspiracy. Likewise, Maseratti and the Garzas challenged the presentence report's recommendation that they be held accountable for 914 kilograms of marijuana.  The court rejected their arguments.

The amount of drugs for which an individual shall be held accountable at sentencing represents a factual finding, and will be upheld unless clearly erroneous.  United States v. Ponce, 917 F.2d 841, 842 (5th Cir. 1990), cert. denied, --- U.S. ---, 111 S.Ct. 1398 (1991).  A factual finding is not clearly erroneous as long as it is plausible in light of the record of the case as a whole.

17

<u>United States v. Shipley</u>, 963 F.2d 56, 58 (5th Cir.), <u>cert. denied</u>, --- U.S. ---, 113 S.Ct. 348 (1992).

The Sentencing Guidelines allow the sentencing court to hold a defendant accountable for all relevant conduct. <u>United States v. Smallwood</u>, 920 F.2d 1231, 1237 (5th Cir. 1991). A co-conspirator is accountable for his own conduct and the foreseeable acts of his co-conspirators committed in furtherance of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B); <u>United States v. Puma</u>, 937 F.2d 151, 159 (5th Cir. 1991), <u>cert. denied</u>, --- U.S. ---, 112 S.Ct. 1165 (1992).

Since the Appellants committed the offenses and were sentenced, the Sentencing Commission has amended U.S.S.G. § 1B1.3 and its commentaries and application notes to clarify what is relevant conduct. Amendment 439 to the guidelines effective November 1, 1992, states "[t]his amendment clarifies and more fully illustrates the operation of this guideline."

The revised guidelines are not applicable to the Appellants. However, if an amendment was intended only to clarify Section 1B1.3's application and, therefore, implicitly was not intended to make any substantive changes to it or its commentary, we may consider the amended language of Application note 2 even though it was not in effect at the time of the commission of the offense. <u>United States v. Evbuomwan</u>, 992 F.2d 70, 74 n.1 (5th Cir. 1993); <u>United States v. Nissen</u>, 928 F.2d 690, 694-95 (5th Cir. 1991).

Application note 2 makes clear that criminal liability and relevant conduct are two different concepts, regardless of whether the indictment includes a conspiracy allegation. A defendant is

18

accountable for the conduct of others that was both: (1) in furtherance of the jointly undertaken criminal activity; and (2) reasonably foreseeable in connection with that criminal activity. The clarifying amendments provide a number of helpful illustrations. Illustration (c)(7) is particularly pertinent:

> Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for that 500 gram amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R.

The illustrations indicate that it was not necessarily the intent of the Sentencing Commission to hold persons who buy or sell drugs to a major distributor responsible for all the drugs bought or sold by that distributor. The district court did not have the benefit of these clarifications at the time of sentencing. We believe that those defendants who may be involved in less than the entire conspiracy should have their sentences reexamined in light of these guideline clarifications. Therefore, the sentences of Appellants Maseratti, Davis, Alvarado, Filoteo, Severo Garza, and Deborah Garza are vacated and their cases are remanded for resentencing in light of the clarification of Guideline 1B1.3.

2. <u>Minor or Minimal Participants.</u> Davis, Maseratti, and Pieratt contend that they should have been given credit for either two or four level reductions as minor or minimal participants in the criminal activity. Guideline section 3B1.2 provides a two- to four-level reduction in the base offense level for those offenders

19

found to be relatively less culpable than others involved in the same scheme or conspiracy. See United States v. Buenrostro, 868 F.2d 135, 137 (5th Cir. 1989), cert. denied, 495 U.S. 928. The guidelines define "minimal participant" as one who demonstrates a "lack of knowledge or understanding of the scope and structure of the enterprise." U.S.S.G. § 3B1.2, comment. (n.1). A "minor participant" is similarly defined as one who is "less culpable than most other participants, but whose role could not be described as minimal." Id. (n.3). Because most offenses are committed by participants of roughly equal culpability, our Court has noted that "it is intended that [the adjustment] will be used infrequently." United States v. Nevarez-Arreola, 885 F.2d 243, 245 (5th Cir. 1989). We are unpersuaded by the Appellants' suggestion that either classification applies to them.

3. Acceptance of Responsibility. Davis and Pieratt challenge the court's refusal to grant them a credit for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. The court found that Davis "has not exhibited an affirmative or timely acceptance of responsibility for his criminal conduct." Davis claims that this ruling is clearly erroneous because he furnished a written statement of accountability. The probation officer in Pieratt's case recommended against the credit because Pieratt did not make a statement relative to his participation in the offense. Pieratt argues that this was unnecessary because those details were thoroughly discussed at trial.

20

The sentencing judge's factual determinations on acceptance of responsibility are entitled to even greater deference than that accorded under a clearly erroneous standard. United States v. Kinder, 946 F.2d 362, 367 (5th Cir. 1991), cert. denied, --- U.S. ---, 112 S.Ct. 1677 (1992). After a careful review of the record, we find Appellants' arguments unconvincing.

As to the remaining issues raised by the Appellants, our detailed and painstaking review of the enormous record and briefs in this case convinces us that the district court committed no reversible error.

For the foregoing reasons, the judgments of conviction are AFFIRMED and the sentences of Maseratti, Davis, Alvarado, Filoteo, Severo Garza, Jr., and Deborah Garza are VACATED and their cases REMANDED for resentencing.