# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30999

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

MELVIN JACKSON, also known as Melvo Jackson,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CR-189-1

Before STEWART, Chief Judge, and CLEMENT and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Melvin Jackson was convicted of three counts: (1) conspiracy to distribute greater than one kilogram of heroin (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(2); felon in possession of a firearm (Count 2), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and (3) possession with intent to distribute heroin (Count 3), in violation of 21 U.S.C.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30999

§ 841(a)(1), (b)(1)(C). Jackson challenges the admission of his custodial statements, the sufficiency of the evidence for his conviction, the admission of evidence relating to an uncharged, alleged attempted murder, and enhancements to his sentence for felon in possession. He also raises a concededly foreclosed constitutional challenge to his sentence. We VACATE and REMAND for resentencing on the permanent or life-threatening injury enhancement. We AFFIRM on all other issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jackson's indictment and ultimate conviction arose from two separate incidents. The first was an alleged shooting that occurred in May of 2012 outside of Roy's Lounge, a dice hall. According to the Government, a dispute began between Jackson and an unidentified victim over dice game winnings. After leaving the dice hall, Jackson evidently pulled a gun from his waistband and handed it to Marvin Dokes ("Dokes"). Dokes then reportedly shot the victim four times in the torso, and Jackson robbed the victim as he lay on the ground. The victim received treatment at a hospital but was uncooperative when questioned. Police have not located the victim since he left the hospital— it is now believed that he used an assumed identity. Video surveillance captured this incident, although the shooting took place off screen. Jackson, a prior felon, was arrested and charged with attempted murder in Louisiana, but he was released on bail in August of 2012. As a result of this event, a federal grand jury indicted Jackson on the charge of felon in possession of a firearm (Count 2).[1]

The second incident involved a Drug Enforcement Agency ("DEA") task force sting that targeted Jackson in August of 2013. After a confidential informant purchased heroin from Jackson, DEA agents raided his trailer and

---

[1] 21 U.S.C. §§ 922(g)(1), 924(a)(2).

recovered approximately twenty-seven grams of heroin. Once arrested, Jackson, without counsel present, spoke extensively with officers about his distribution of heroin. This operation led to Jackson's indictments for conspiracy to distribute more than one kilogram of heroin (Count 1)[2] and possession with intent to distribute heroin (Count 3).[3] The timeline provided by the Government indicates that the conspiracy started sometime prior to January of 2012 and continued through August of 2013, when Jackson was arrested.

Prior to trial, Jackson filed a motion to suppress the statements he made while in police custody. He claimed that he never received his *Miranda* warnings and that his statements were not voluntary.[4] The court denied his motion to suppress, relying on the testimonies of DEA Agent Scott and another officer that Jackson received his *Miranda* warnings orally. After the government presented their case-in-chief, the district court denied Jackson's motion for a judgment of acquittal. The jury convicted Jackson on all three counts.

At sentencing, the district court applied a sentencing enhancement based on the shooting at the lounge, by cross-referencing from the felon in possession Guideline to the attempted murder Guideline. U.S.S.G. § 2K2.1(c)(1). The district court also added a four-level enhancement because it found that the attempted murder resulted in permanent or life-threatening bodily injury to the victim. *Id.* § 2A2.1(b)(1). Jackson received 360 months for his conspiracy conviction, 120 months for his felon in possession conviction, and 240 months for his possession with intent to distribute conviction. Jackson timely appealed.

---

[2] 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A).

[3] 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

[4] *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

No. 15-30999

## II. DISCUSSION

Jackson challenges his conviction on three grounds and his sentence on two grounds. We address each argument in turn.

*A. Motion to Suppress*

When assessing a district court's denial of a motion to suppress, "we review the district court's factual findings for clear error and its legal conclusions . . . de novo." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). This court "view[s] the evidence in the light most favorable to the party that prevailed in the district court." *Id.* Our review includes evidence produced at both the suppression hearing and trial. *United States v. Hope*, 102 F.3d 114, 116 (5th Cir. 1996).

Jackson argues that the district court erred when it denied his motion to suppress the statements he made while in custody. He claims he never received his *Miranda* warnings, and he points to what he alleges are inconsistencies in the record to support his claim. At the motion to suppress hearing, Agent Scott testified that he read Jackson his *Miranda* warnings and received Jackson's waiver, but that he did not have any preprinted waiver forms for Jackson to sign. He was adamant that Jackson had not signed a written waiver. At trial, however, Tangipahoa Parish Sheriff's Detective Gemar testified that he, Agent Scott, and Jackson had all signed a waiver of rights form. That waiver was also entered into evidence. According to Jackson, these inconsistent statements cast doubt on whether or not he received his *Miranda* warnings.

We disagree. Four pieces of evidence support the district court's denial of Jackson's motion to suppress: (1) Agent Scott's testimony; (2) Jackson's stipulation that another agent, Schwebel, would testify that he heard Agent Scott give Jackson his *Miranda* warnings; (3) the testimony of Detective Gemar; and (4) the waiver form introduced at trial. The Government explained

that it did not know about the written waiver until after the motion to suppress hearing and that Agent Scott was simply mistaken in thinking that Jackson had not signed a waiver of rights form.   The district court accepted this testimony.   Furthermore, Jackson has made no attempt to rebut any piece of evidence that he waived his rights; he simply points out the differing accounts about whether his warning and waiver were written or oral—a distinction that is immaterial.  *Cf. Berghuis v. Thompkins*, 560 U.S. 370, 383–84 (2010) (a waiver need not be formal or express).   Ultimately, there are some inconsistencies concerning the manner in which Jackson received his *Miranda* warnings, but there is nothing in the record that contradicts the multiple pieces of evidence that show Jackson received and waived his *Miranda* rights.[5]

Therefore, we hold that the district court did not err when it denied Jackson's motion to suppress his custodial statements.

*B. Sufficiency of the Evidence*

We review a denial of a motion for judgment of acquittal de novo.  *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011).  Our "analysis focuses on 'whether, after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Jackson challenges the sufficiency of the evidence for his conviction of conspiracy to distribute more than one kilogram of heroin.  Specifically, he contends that the Government never established that he entered into an agreement with others to distribute heroin.   He also claims that the Government never proved that the amount of heroin that it alleges he

---

[5] On appeal, Jackson does not advance any arguments that his waiver was not voluntary other than his assertion that he did not receive his *Miranda* warnings.

No. 15-30999

conspired to distribute exceeded one kilogram. We find these arguments unpersuasive.

*1. Agreement*

In order "[t]o prove a conspiracy, the government must prove (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) that each conspirator knew of the conspiracy and intended to join it; and (3) that each alleged conspirator participated in the conspiracy." *United States v. Morris*, 46 F.3d 410, 414–15 (5th Cir. 1995). "The agreement may be tacit, and the jury may infer its existence from circumstantial evidence." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003). We have long recognized that individuals can be convicted of a conspiracy even when the co-conspirators are unknown or unindicted. *E.g., United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976).

Jackson argues that the Government failed to prove beyond a reasonable doubt the agreement element of his conspiracy charge because it failed to show that he engaged in anything more than "a one-man heroin distribution operation."[6] According to Jackson, the Government also failed to demonstrate any common goal between him and other co-conspirators other than the desire to buy or sell heroin.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found that Jackson was a part of a conspiracy to distribute heroin. First, we note that the common desire to illegally buy and sell narcotics is sufficient to satisfy the common goal element of the conspiracy.

---

[6] Jackson appears to be making an oblique reference to this court's "buyer-seller exception," but that exception only applies to "prevent[] a single buy-sell agreement, which is necessarily reached in every commercial drug transaction, from automatically becoming a conspiracy to distribute drugs." *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012) (en banc). Here, the record establishes that Jackson was more than a "mere acquirer[]" or "street-level user[]." *Id.*

*See Morris*, 46 F.3d at 415 (finding that "[t]he overall objective or goal was for everyone in the conspiracy to profit from the illicit purchase and selling of [narcotics]"); *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993) (explaining that "[o]ne becomes a member of a drug conspiracy if he knowingly participates in a plan to distribute drugs, whether by buying, selling or otherwise").

Additionally, numerous pieces of evidence established that Jackson engaged in an organized drug distribution operation with other individuals. In his statements to officers, Jackson identified two main suppliers, Mike and Syd, who he regularly purchased heroin from. Jackson explained that he would order the product from Syd and Mike would deliver it. Jackson purchased and received heroin from these two individuals weekly. The jury also heard Brandon Watkins ("Watkins"), who is currently incarcerated, testify that he frequently bought heroin from Jackson. Watkins stated that he sold heroin for several people but that Jackson was his "main man." Watkins claimed he first purchased heroin from Jackson in 2011, and he received it from Jackson every other day. He would then sell the heroin or pass it along to other sellers.

Based on this evidence, a rational jury could have found beyond a reasonable doubt that Jackson "knowingly joined an agreement to distribute drugs in violation of the law." *Maseratti*, 1 F.3d at 336.

*2. Amount of Heroin*

An individual is subject to enhanced penalties when he distributes more than one kilogram of heroin. 21 U.S.C. § 841(b)(1)(A). For "enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B)" to apply, "the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." *United States v. Doggett*, 230 F.3d 160, 164–65 (5th Cir. 2000).

No. 15-30999

Agents seized approximately twenty-seven grams of heroin from Jackson's trailer. This was the only heroin recovered in connection with the drug charges, yet the jury convicted Jackson of conspiracy to distribute over one kilogram of heroin. Jackson argues, based on the small amount of heroin actually recovered, that the Government failed to meet its burden of showing beyond a reasonable doubt that the amount of heroin he distributed exceeded one kilogram.

First, we note that the indictment reflected that Jackson conspired to distribute over one kilogram of heroin, and the jury convicted him of that count. Jackson is correct that the only heroin recovered in this case amounted to just under twenty-seven grams. But Jackson's confession indicates that he received and distributed significantly more than twenty-seven grams of heroin. Jackson stated that he started buying heroin from his supplier, Mike, after he was released on bail in August of 2012. At that time, he received about half a kilogram of heroin from Mike. Then, starting in February or March of 2013, Jackson would place orders through Syd that Mike would deliver. This arrangement continued until the task force raided his trailer in August of 2013. These deliveries were four ounces a week (approximately 113 grams/week), except for the last delivery, which totaled two-and-a-half ounces (approximately 71 grams). Jackson helped an officer perform a quick calculation and estimated that he had received a total of about two kilograms of heroin from his suppliers.

In addition, Watkins testified that he bought between a quarter to a half ounce of heroin (about seven to fourteen grams) from Jackson every other day. He said that he started purchasing heroin from Jackson in 2011, and that this continued until Jackson was arrested on the drug charges—excluding the time Jackson spent in jail on the attempted murder charge. Even at just seven grams every other day, Jackson would have exceeded the one kilogram

threshold in 286 days, which is consistent with the charged conspiracy's timeframe and Watkins's testimony.  If the jury credited either Jackson's or Watkins's statements, each would independently establish that Jackson had engaged in a conspiracy to distribute over one kilogram of heroin.  Although mere inferences and speculation over the amount of drugs involved are not sufficient evidence to uphold an enhanced penalty under Section 841(b)(1)(A), *see United States v. Daniels*, 723 F.3d 562, 571–72 (5th Cir. 2013), here there was specific testimony concerning the drug quantities.

For these reasons, a rational jury could find beyond a reasonable doubt that the conspiracy encompassed more than one kilogram of heroin, despite the small amount of heroin recovered from Jackson's trailer.

*C. Admitted Evidence of the Uncharged, Alleged Attempted Murder*

Because Jackson never objected at trial to the introduction of evidence relating to the uncharged, alleged attempted murder, we review for plain error. *United States v. Morin*, 627 F.3d 985, 994 (5th Cir. 2010).  Under plain error review, the court must determine (1) if an error occurred, (2) if it was plain or obvious, and (3) if it affected substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  If such an error occurred, then (4) the court has the discretion to remedy the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *Id.*

Jackson argues that evidence was improperly admitted at trial with respect to the alleged attempted murder that his felon in possession charge stems from.  He focuses on the video shown to the jury at trial that depicts the shooting and robbery at Roy's Lounge.  According to Jackson, Rule 404(b) should have applied to bar this evidence from being introduced at trial. Regardless, if Rule 404(b) does not apply, Jackson argues that the evidence was unfairly prejudicial and should have been excluded under Rule 403.  We disagree.

No. 15-30999

Rule 404(b) limits the introduction of "crimes, wrongs, or other acts" if such evidence is used to show character. Fed. R. Evid. 404(b). However, Rule 404(b) does not apply when the other act is intrinsic to the crime charged. *See United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Under this court's precedent, "[e]vidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode . . . ." *Id.* Still, "[e]ven intrinsic evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Barnes*, 803 F.3d 209, 220–21 (5th Cir. 2015) (citing Fed. R. Evid. 403).

We cannot conclude on the record before us that the district court plainly erred in allowing evidence of the uncharged shooting and robbery. These acts were intrinsic to the crime charged. The shooting, robbery, and Jackson's possession of the handgun formed a "single criminal episode." *Sumlin*, 489 F.3d at 689. Jackson's possession of the firearm occurred almost contemporaneously with the shooting and robbery, and the entire episode took less than a minute. Thus, exclusion under Rule 404(b) is not proper.

Further, we are not persuaded by Jackson's alternative argument that the danger of unfair prejudice substantially outweighed the probative value of the video. Fed. R. Evid. 403. The video was highly probative. It clarified identity, which was at issue in the case. The portion of the video in which the shooting occurred also established that the item Jackson handed Dokes was in fact a firearm. This is especially probative because investigators never recovered the weapon. While the video of the alleged attempted murder is unfavorable to Jackson, it is not unfairly prejudicial.[7] Moreover, the district

---

[7] Jackson relies heavily on a Third Circuit case, *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012), to make his Rule 403 argument. *Cunningham* involved multiple "violent and sadistic" child pornography videos being shown to a jury. *Id.* at 390–91. We do

court gave a pattern jury instruction, reminding the jurors that Jackson was only on trial for the felon in possession charge, which further ameliorated any danger of unfair prejudice. [8]

Accordingly, we conclude that the district court did not plainly err when it admitted video evidence of the alleged attempted murder. *See Puckett*, 556 U.S. at 135.

*D. Application of the Attempted Murder Sentencing Guideline*

This court reviews the district court's "application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010) (quoting *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007)). In order to apply an enhancement, the court "may draw reasonable inferences to determine whether the record supports the enhancement by a preponderance of the evidence." *United States v. Myers*, 772 F.3d 213, 220 (5th Cir. 2014).

Jackson urges that the district court erred at sentencing by applying an enhancement that resulted from cross-referencing the felon in possession Guideline to the attempted murder Guideline. He additionally states that, even if the cross-reference is proper, the district court incorrectly imposed a sentencing enhancement for permanent or life-threatening injury instead of serious bodily injury.

*1. Cross-Reference to Attempted Murder*

The felon in possession Guideline allows for a cross-reference to the attempted murder Guideline "if the defendant . . . possessed or transferred a

---

not believe the facts of *Cunningham* are applicable to the case before us. The surveillance video shown to the jury had no audio, was in black and white, and the shooting took place off screen. The district court also stopped the video once the man alleged to be Jackson left the frame and only the victim remained visible.

[8] A proper jury charge can temper the risk of unfair prejudice. *See United States v. Williams*, 620 F.3d 483, 492 (5th Cir. 2010).

firearm . . . cited in the offence of conviction with knowledge or intent that it would be used . . . in connection with [the attempted murder]." U.S.S.G. § 2K2.1(c)(1).[9]

Jackson argues that there was insufficient proof that the gun used in the shooting was the one "described in the count of conviction." He also claims that he lacked "knowledge or intent" that the gun would be used in the shooting.

At sentencing, the district court stated that it relied on the Presentence Investigation Report as well as the video of the shooting when applying the cross-reference for attempted murder. The gun seen in the video is the one at issue in the felon in possession count. The shooting takes place mere seconds after Jackson hands the gun to Dokes and walks off screen. Moreover, Jackson's subsequent robbery of the victim—also captured on film—shows he had "knowledge or intent" that the gun would be used. U.S.S.G. § 2K2.1(c)(1).

We hold that the court properly cross-referenced the felon in possession Guideline with the attempted murder Guideline in accordance with Section 2K2.1(c)(1).

*2. Permanent or Life-Threatening Injury*

As this court has noted, the severity of injury is a fact inquiry, so we apply clear error review. *See United States v. Moore*, 997 F.2d 30, 37 (5th Cir. 1993). The attempted murder Guideline provides a sentencing enhancement if the victim is injured. U.S.S.G. § 2A2.1(b). The enhancement is four levels for permanent or life-threatening injury and two levels for serious bodily injury. *Id.* § 2A2.1(b)(1)–(2). The Sentencing Guidelines define permanent or life-threatening bodily injury as "injury involving a substantial risk of death;

---

[9] *See* U.S.S.G. § 2K2.1(c)(1)(A) (cross-referencing inchoate crimes under § 2X1.1); § 2X1.1(c)(1) (cross-referencing enumerated inchoate crimes, such as attempted murder, § 2A2.1(a)(1)). Attempted first degree murder includes an attempted killing "committed in the perpetration of . . . robbery." 18 U.S.C. § 1111(a).

loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." *Id.* § 1B1.1 cmt. 1(J). In contrast, serious bodily injury is an injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 cmt. 1(L).

Jackson challenges the district court's application of a four-level sentence enhancement for permanent or life-threatening bodily injury, rather than a two-level enhancement for serious bodily injury. *Id.* § 2A2.1(b)(1)–(2). In support of his contention, he points to the lack of evidence in the record concerning the extent of the victim's injuries.

On the other hand, the Government points to evidence that it believes adequately supports a finding of permanent or life-threatening injury: the victim sustained four gunshots with .45 caliber bullets to his torso at close range, remained on the ground unable to stand, and was injured enough to be taken to the hospital. Although the government had access to the victim's medical records, they were not presented to the district court. Nothing else is known about the victim or his injuries. It is presumed that he used a false identity, and the Government was unsuccessful in its attempts to contact him.

This court has stated that "the focus of the inquiry is *not* on the actions of the defendant, but rather *on the injury sustained.*" *United States v. Guerrero*, 169 F.3d 933, 946 (5th Cir. 1999). The record establishes that the victim received four gunshot wounds at close range from a large-caliber weapon, that the bullets entered his left torso, and that he was hospitalized for his injuries. These facts, standing alone, are insufficient to warrant an enhancement for permanent or life-threatening injury. While in theory these injuries could support an enhancement for permanent or life-threatening injury, they could

equally support an enhancement for serious bodily injury.  *See* U.S.S.G § 1B1.1 cmt. 1(L) (defining serious bodily injury as "extreme physical pain or the protracted impairment of a function of a bodily member, . . . or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation").  Indeed, the government chose not to introduce the victim's medical records, which could have provided insight into the severity of the injury suffered by the victim.  The factual findings in the record do not reveal that the injuries actually suffered by the victim were permanent or life-threatening.

The district court sentenced Jackson to an above Guidelines sentence, but we cannot conclude that this error was harmless.  In light of *Molina-Martinez v. United States*, we remand this case to the district court to consider the correct application of the Guidelines.  136 S. Ct. 1338, 1346–47 (2016) (stating that in most cases the Guidelines are the lodestar for sentencing proceedings and that an incorrect application of a higher Guidelines range will usually result in a different outcome).  The record before us does not sufficiently demonstrate that the sentence imposed would have been the same regardless of the application of the four-level enhancement for permanent or life-threatening injury.  *See id.*

Because we do not believe there were enough factual findings in the record to support the imposition of the four-level enhancement, we remand this issue to the district court to make a new determination on this enhancement and Jackson's ultimate sentence.  At resentencing, the district court should allow both sides "to present evidence as to the nature, severity, and likely duration of th[e] injuries." *United States v. Spinelli*, 352 F.3d 48, 60 (2d Cir. 2009).  "We express no view on what sentence the court should impose on remand." *United States v. Zapata-Lara*, 615 F.3d 388, 391 (5th Cir. 2010). But

14

the district court should "make the appropriate findings and state plainly the basis for its decision." *Id.*

Accordingly, we vacate Jackson's sentence and remand it so that the district court can make additional factual findings regarding whether the enhancement for permanent or life-threatening injury is warranted in light of the foregoing.

*E. Constitutional Challenge to Sentencing*

Finally, neither party disputes that this court's precedent forecloses Jackson's argument that basing his sentence in part on an uncharged offense violates his constitutional rights. *See United States v. Hernandez*, 633 F.3d 370, 374 (5th Cir. 2011) *as revised* Mar. 23, 2011. Jackson seeks only to preserve this issue for further review. *See United States v. Valdez-Maltos*, 443 F.3d 910, 912 (5th Cir. 2006). We therefore affirm the district court on this issue.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Jackson's conviction. We VACATE and REMAND Jackson's sentence for further consideration of the permanent or life-threatening bodily injury enhancement consistent with this opinion.